UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KATHLEEN EBERLE,

        Plaintiff,        CIVIL ACTION NO. 12-CV-15107

vs.

                          DISTRICT JUDGE TERRENCE G. BERG

COMMISSIONER OF        MAGISTRATE JUDGE MONA K. MAJZOUB
SOCIAL SECURITY,

        Defendant.
_____/

## REPORT AND RECOMMENDATION

Plaintiff Kathleen Eberle seeks judicial review of Defendant the Commissioner of Society Security's determination that she is not entitled to social security benefits for her disabilities under 42 U.S.C. § 405(g). (Docket no. 1.) Before the Court are Plaintiff's Motion for Summary Judgment (docket no. 10) and Defendant's Motion for Summary Judgment (docket no. 12). The motions have been referred to the undersigned for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). (Docket no. 2.) The Court has reviewed the pleadings, dispenses with a hearing, and issues this report and recommendation pursuant to Eastern district of Michigan Local Rule 7.1(f)(2).

**I.    RECOMMENDATION:**

This Court recommends that Plaintiff's Motion for Summary Judgment (docket no. 10) be GRANTED IN PART and DENIED IN PART, that Defendant's Motion for Summary Judgment (docket no. 12) be DENIED, and that this matter be remanded for further consideration pursuant to sentence four of 42 U.S.C. § 405(g).

**II.    PROCEDURAL HISTORY:**

Plaintiff filed an application for Disability Insurance Benefits with a protective filing date of February 8, 2007, alleging that she had been disabled since December 2, 2006,[1] due to headaches, nausea, and asthma associated with chemical and environmental allergies.  (*See* TR 33-38.)  The Social Security Administration denied benefits.  (*See* TR 33.)  Plaintiff requested a *de novo* hearing, which was held on July 21, 2010, before Administrative Law Judge (ALJ) Michael E. Finnie, who subsequently found that Plaintiff was not entitled to benefits because she was not disabled under the Act.  (TR 35-38.)  The Appeals Council declined to review the ALJ's decision (TR 1), and Plaintiff commenced this action for judicial review.

### III.    PLAINTIFF'S TESTIMONY AND MEDICAL EVIDENCE

####    A.    Plaintiff's Testimony

Plaintiff was 52 years old at the time of the administrative hearing and 47 years old at the time of alleged onset.  (*See* TR 51.)  She has an eleventh-grade education, and at the time of the hearing, she was married and living with her husband.  (TR 51.)  Plaintiff testified that she had not worked since December 2006 when she took a "medical retirement" due to migraine headaches with vomiting, light sensitivity, noise sensitivity, fatigue, and joint pain as well as "breathing problems around certain chemicals and fragrances."  (TR 51.)

Plaintiff told that ALJ that she is unable to work because she has a "chemical sensitivity to fragrances and exposure to cleaning products."  She added that her sensitivity is due to a chemical toxicity caused by overexposure to chemicals at her previous job.  (TR 59.)  She testified that she was allergic to "everything" (TR 61), but she was able to do things in her home, because she had her home de-scented–that is, she had no fragrances in her home, and she used only fragrance- and

---

[1] Plaintiff originally alleged onset date of October 5, 2005, but she amended her alleged onset date before her administrative hearing.  (*See* TR 49.)

chemical-free cleaning products. (TR 52.) Plaintiff testified that when she left her home, "within a half hour or so, [she] started (sic) a headache or having an asthma problem and [would] have to return home." (TR 52.)

Plaintiff testified that she was diagnosed with asthma in the early 1990s and that she had taken a variety of different medications, including inhalers. (TR 52.) She had also tried a nebulizer machine, but she was not using one at the time of the hearing. Plaintiff had not been to the hospital for an asthma-related issue within one year leading up to the hearing, and she was not using oxygen. (TR 53.) Plaintiff noted that her asthma was triggered by base chemicals, like ammonia, bleach, and petroleum products, and by cold weather or high humidity. (TR 53) Plaintiff testified that she had eliminated these products from her home, and when she put gas in her car or was with someone who put gas in a car, she wore a mask or covered her face with a wet cloth. (TR 54). Plaintiff also told the ALJ that her headaches could be caused by high-pitched noises, intense light, or temperature variations. (TR 67-68.)

Plaintiff told the ALJ that an attack caused by a reaction to these chemicals or allergens started with severe migraine pain, vomiting, and light sensitivity. And then, on some occasions, it was accompanied by an asthma attack, which included shortness of breath and tightness in her chest. She added that the headache pain was usually about a five or a six on a ten-point scale and that it lasted anywhere from one day to three or four days. (TR 66.) Plaintiff further testified that when she had a migraine, she could not focus or concentrate. (TR 65.) She would also sometimes have joint pain and fatigue following exposure to chemicals. (TR 78-79.) She told the ALJ that she usually would not go to the doctor unless she was vomiting, which had happened four times in the six months leading up to the hearing. (TR 67.)

3

Plaintiff testified that the migraines started in the 1980s and that she had tried "all different kinds of medications." (TR 56.) Plaintiff received treatment for her headaches at the Headache Clinic in the early 1990s. She testified that she had received injections for her headaches, but the injections did not help, so she had not been back to the clinic since that time. (TR 56-57.) She further testified that she had stopped going to the hospital over the years because she found out that she was allergic to many of the medications that she was taking; the only way she was able to control her migraines was to stay in a cool, dark room at home. (TR 72-74.) Plaintiff also added that when she did go to the doctor, sometimes she would run into another patient wearing cologne or perfume, which would push her to the point of needing an injection to alleviate her pain. (TR 75-76.)

Plaintiff testified that she was "down with migraines" three or four days a week, but only because she ran to the store and entered an environment that triggered them. (TR 57.) Plaintiff told the ALJ that when she stayed in her home, she could go a week without getting a headache. (TR 58.) And when she didn't have a headache, she could do light housework or even cook meals. (TR 69.) She testified that when she did go to the store, she went at times when she could avoid large crowds (because of perfumes and colognes), and construction on the roadways (because the asphalt set off her headaches). (TR 63.)

### B. Medical Record

Plaintiff and Defendant each set forth an overview of Plaintiff's medical record. (*See* docket no. 10 at 8-11; docket no. 12 at 8-9.) The undersigned hereby adopts the medical record as set forth by the parties and will cite to additional medical evidence as relevant herein.

## IV. ADMINISTRATIVE LAW JUDGE'S DETERMINATION

The ALJ found that Plaintiff met the insured status requirements of the Act through December 31, 2010; that she had not engaged in substantial gainful activity since October 5, 2005, the date of her alleged onset; and that she suffered from asthma, chemical and environmental sensitivity, and migraines. (TR 35.) The ALJ also found, however, that these medically determinable impairments (individually or in combination) did not significantly limit Plaintiff's ability to perform basic work-related activities for 12 consecutive months, and therefore, Plaintiff did not have a severe impairment or combination of impairments. (TR 35-38.) Thus, the ALJ found that Plaintiff had not been disabled from the time of her alleged onset through the date of the ALJ's decision. (TR 38-39.)

## IV.     LAW AND ANALYSIS

### A.     Standard of Review

Pursuant to 42 U.S.C. § 405(g), this Court has jurisdiction to review the Commissioner's final decisions. Judicial review of the Commissioner's decisions is limited to determining whether his findings are supported by substantial evidence and whether he employed the proper legal standards. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Walters v. Comm'r*, 127 F.3d 525, 528 (6th Cir. 1997). Substantial evidence is more than a scintilla but less than a preponderance; it is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Walters*, 127 F.3d at 528. It is not the function of this Court to try cases *de novo*, resolve conflicts in the evidence, or decide questions of credibility. *See Brainard v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, the court must examine the administrative record as a whole. *See Kirk v. Sec'y of Health and Human Servs.*, 667 F.2d 524, 536

(6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983).  If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even if the reviewing court would decide the matter differently, *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion.  *See Her v. Comm'r*, 203 F.3d 388, 389-90 (6th Cir. 1999); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc) (noting that the substantial evidence standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts").

      **B.**      **Framework for Social Security Determinations**

Plaintiff's Social Security disability determination was made in accordance with a five-step sequential analysis.  In the first four steps, Plaintiff was required to show that:

(1) Plaintiff was not presently engaged in substantial gainful employment; and

(2) Plaintiff suffered from a severe impairment; and

(3) the impairment met or was medically equal to a "listed impairment;" or

(4) Plaintiff did not have the residual functional capacity (RFC) to perform relevant past work.

*See* 20 C.F.R. § 404.1520(a)-(f).  If Plaintiff's impairments prevented Plaintiff from doing past work, the Commissioner, at step five, would consider Plaintiff's RFC, age, education, and past work experience to determine if Plaintiff could perform other work.  If not, Plaintiff would be deemed disabled.  *See id.* at § 404.1520(g).  The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform."  *Her*, 203 F.3d at 391.  To meet this burden, the Commissioner must make a finding "supported by substantial evidence that [the claimant] has the vocational qualifications to perform specific jobs."  *Varley v. Sec'y of Health and Human Servs.,* 820 F.2d 777, 779 (6th Cir. 1987).  This "substantial evidence"

may be in the form of vocational expert testimony in response to a hypothetical question, "but only 'if the question accurately portrays [the claimant's] individual physical and mental impairments.'" *Id.* (citations omitted).

### C. Analysis

The Social Security Act authorizes "two types of remand: (1) a post judgment remand in conjunction with a decision affirming, modifying, or reversing a decision of the [Commissioner] (a sentence-four remand); and (2) a pre-judgment remand for consideration of new and material evidence that for good cause was not previously presented to the [Commissioner] (a sentence-six remand)." *Faucher v. Sec'y of Health and Human Servs.*, 17 F.3d 171, 174 (6th Cir. 1994) (citing 42 U.S.C. § 405(g)). Under a sentence-four remand, the Court has the authority to "enter upon the pleadings and transcript of the record, a judgment affirming, denying, or reversing the decision of the [Commissioner], with or without remanding the cause for a hearing. 42 U.S.C. § 405(g). Where there is insufficient support for the ALJ's findings, "the appropriate remedy is reversal and a sentence-four remand for further consideration." *Morgan v. Astrue*, 10-207, 2011 WL 2292305, at *8 (E.D.Ky. June 8, 2011) (citing *Faucher*, 17 F.3d at 174). Plaintiff argues that the ALJ erred when he failed to give controlling weight to the opinion of Plaintiff's treating physician and ultimately found at Step 2 of the sequential analysis that Plaintiff did not suffer from a severe impairment or combination of impairments. (Docket no. 10 at 7.) Plaintiff asks the Court to award benefits or, in the alternative, to remand this matter for further proceedings. (*Id.* at 17.)

The ALJ found that Plaintiff suffered from asthma, chemical and environmental sensitivity, and migraines (TR 35) but found that these impairments did not significantly limit her ability to perform basic work-related activities (TR 35-38). In reaching this conclusion, the ALJ states that he relied on an evaluation prepared by Dr. Nadir Kahn, a consultative examiner; medical records

7

from Dr. Deborah Peery, Plaintiff's primary care physician, and Dr. Paula Davey, Plaintiff's allergist; and medical records from St. Joseph Mercy Hospital. (TR 37.) The ALJ found that Plaintiff's asthma was "generally controlled" because she had never required in-patient hospitalization, she had never required the use of oxygen, and her records contained no results of pulmonary function studies. (TR 37.) The ALJ further found that Plaintiff's migraine headaches were not "disabling" because she did not require recurrent hospitalization or emergent treatment, she had not returned to the headache clinic since 1990, she had not been referred for a neurological examination, and she had not seen a psychiatrist even though such treatment was recommended. (TR 37-38.) The ALJ also found that Plaintiff was not credible because while she indicated that her condition kept her housebound, she was able to drive and ride in a car (while wearing a mask), she went grocery shopping once a week, and she was able to visit a cabin in northern Michigan. (TR 38.) The ALJ also noted that while Dr. Davey testified in a workers-compensation matter that Plaintiff was disabled due to chemical sensitivities and allergies, this finding was based on Plaintiff's subjective statements and not on objective testing. (TR 38.)

The step-two burden of establishing a "severe" impairment has been characterized as "*de minimis.*" *See Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988); *Murphy v. Sec'y of Health & Human Servs.*, 801 F.2d 182, 185 (6th Cir. 1986). Under the regulations, an impairment is "not severe if it does not significantly limit [a claimant's] physical or mental ability to do basic work activities, [such as] . . . [u]nderstanding, carrying out, and remembering simple instructions, [and][u]se of judgment." 20 C.F.R. §§ 404.1521 and 416.921. An impairment only qualifies as "non-severe" if it "would not affect the claimant's ability to work," regardless of the claimant's age, education, or prior work experience. *Salmi v. Sec'y of Health & Human Srvs.*, 774 F.2d 685, 691-92 (6th Cir. 1985). Only slight abnormalities that minimally affect a claimant's ability to work can be

8

considered non-severe. *Higgs*, 880 F.2d at 862; *Farris v. Sec'y of Health & Human Servs.*, 773 F.2d 85, 90 (6th Cir. 1985). Thus, the application of the requirement to establish "severity" is quite "lenient," and generally it is "employed as an administrative convenience to screen out claims that are 'totally groundless' solely from a medical standpoint." *Higgs*, 880 F.2d at 862-63.

Here, the ALJ erred in finding that Plaintiff failed to prove that she suffered from a severe impairment at Step 2 of the framework. In sum, the ALJ's conclusion rests on his determination that Plaintiff provided no objective medical evidence to support her allegations. If this were accurate, the ALJ's decision would be supported by substantial evidence. But the ALJ failed to consider (or at least discuss) the following:

- Treatment notes and diagnoses from Dr. Peery, Plaintiff's treating physician (TR 539-556);
- Treatment notes and diagnoses from Dr. Davey, the allergist to whom Plaintiff was referred by Dr. Peery (TR 576-583); and
- A Brain SPECT examination report authored by Dr. Theodore Simon indicating that Plaintiff suffered from neurotoxic exposure (TR 596).

And while the ALJ is not required to discuss every piece of evidence in the record, the undersigned finds that a failure to discuss objective evidence in the face of a conclusion that no such evidence exists is reversible error.

Moreover, it is well-settled that the opinions of treating physicians are generally accorded substantial deference. In fact, the ALJ must give a treating physician's opinion complete deference if it is supported by clinical and laboratory diagnostic evidence and it is not inconsistent with the other substantial evidence in the record. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). When an ALJ determines that a treating source's medical opinion is not controlling, he must determine how much

weight to assign that opinion in light of several factors: (1) length of the treatment relationship and frequency of examination; (2) nature and extent of the treatment relationship; (3) supportability of the opinion; (4) consistency of the opinion with the record as a whole; (5) specialization of the treating source, and (6) other factors. 20 C.F.R. §§ 404.1527(c)(2)-(6), 416.927(c)(2)-(6). Most importantly, though, the Commissioner requires its ALJs to "always give good reasons in [their] notice of determination or decision for the weight [they] give [a] treating source's opinion." 20 C.F.R.§§ 404.1527(c)(2), 416.927(c)(2). Those good reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Wilson v. Comm'r*, 378 F.3d at 544 (quoting SSR 96-2p, 1996 WL 374188, at *5 (1996)). The district court should not hesitate to remand when the Commissioner has failed to identify the weight assigned to a treating physician opinion and provide good reasons for that weight. *See Cole v. Astrue*, 661 F.3d 931, 939 (6th Cir. 2011) ("This Court has made clear that '[w]e do not hesitate to remand when the Commissioner has not provided 'good reasons' for the weight given to a treating physician's opinion and we will continue remanding when we encounter opinions from ALJ's that do not comprehensively set forth the reasons for the weight assigned to a treating physician's opinion.") (citing *Hensley v. Astrue*, 573 F.3d 263, 267 (6th Cir.2009)). Here, the ALJ appears to have completely discounted the opinions of Plaintiff's primary physician and her allergist and, other than stating that there is no objective evidence to support the opinions, the ALJ provided no reason for this decision.

The undersigned acknowledges that remanding this matter for further determination may be an exercise in futility as the ALJ may find at Step 4 that the Plaintiff's residual functional capacity does not preclude her from performing substantial work in the economy. Nevertheless, the

undersigned finds that remanding this matter is appropriate because the ALJ erred at Step 2 of the framework in finding that Plaintiff had failed to clear the de minimus hurdle necessary to establish that the migraines and asthma attacks that she suffers related to her chemical sensitivity have more than a minimal effect on her ability to perform work-related activities. The undersigned does not find, however, that an award of benefits is appropriate without further inquiry. Therefore, the undersigned recommends remanding this matter for further determination by the ALJ under 42 U.S.C. § 405(g).

## V.     CONCLUSION

For the reasons stated herein, Plaintiff's Motion for Summary Judgment (docket no. 10) should be GRANTED IN PART and DENIED IN PART, that Defendant's Motion for Summary Judgment (docket no. 12) should be DENIED. Therefore, this matter should be remanded for further consideration pursuant to sentence four of 42 U.S.C. § 405(g).

### REVIEW OF REPORT AND RECOMMENDATION

Either party to this action may object to and seek review of this Report and Recommendation, but must act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to

Rule 72.1(d)(2) of the *Local Rules of the United States District Court for the Eastern District of Michigan*, a copy of any objection must be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

Dated: November 26, 2013   s/ Mona K. Majzoub
MONA K. MAJZOUB
UNITED STATES MAGISTRATE JUDGE

**PROOF OF SERVICE**

I hereby certify that a copy of this Report and Recommendation was served upon Counsel of Record on this date.

Dated: November 26, 2013   s/ Lisa C. Bartlett
Case Manager